IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SIDNEY LEE, | : | |
| Movant | : | Criminal Action No. 1:06-cr-267 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |
| | : | |

**ORDER**

Before this Court is Movant Robert Sidney Lee's motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255 (Doc. No. 134) and Lee's motion for credit time served (Doc. Nos. 119, 130). An evidentiary hearing on the § 2255 motion was held April 20, 2010. For the reasons that follow, the motions will be denied.

**I.    BACKGROUND**

On August 28, 2005, Mifflin County Police were called to investigate a domestic disturbance. Denise Sherlock had called police because Movant Robert Sidney Lee was allegedly assaulting her, stealing her prescription medication, and threatening to set fire to her automobile. The police arrested Lee at the scene, finding .33 grams of crack cocaine and a drug "owe sheet" on his person at the time of arrest.

On August 6, 2006, Lee was federally indicted, along with co-defendant Cecil Swartz, on charges of distribution of heroin resulting in death, and distribution and possession with intent to distribute heroin, cocaine, and more than fifty grams of crack cocaine. (Doc. No. 1.) Attorney Dennis Boyle represented Lee at all except the preliminary stages of the proceedings. (Doc. No. 48.) A superceding indictment was filed on February 28, 2007 (Doc. No. 52), followed by a one-

1

count information on August 20, 2007. (Doc. No. 80.) The felony information, to which Lee pled guilty on September 24, 2007, charged him only with distribution and possession with intent to distribute an undisclosed amount of heroin. (Id. 80.) The plea agreement stated that the maximum penalty was twenty years. (Doc. No. 82 at 2, 3, 8.) The plea agreement also provided that the Government would move for a downward departure at sentencing on the basis of acceptance of responsibility. (Id. at 6.) On March 12, 2008, Lee was sentenced to 96 months imprisonment with three years of supervised release. (Doc. No. 104.)

Lee appealed the sentence, arguing that his guilty plea was not knowing, intelligent, and voluntary, that this Court abused its discretion in imposing a sentence of 96 months, and that counsel was ineffective. (Doc. No. 131-2 at 4.) The Third Circuit Court of Appeals affirmed the sentence but did not rule on the ineffective assistance of counsel claim. (Doc. No. 131-2.)

## II. DISCUSSION

In his § 2255 motion, Lee argues that his counsel was ineffective in several respects.[1] Specifically, Lee argues that Boyle improperly advised him to plead guilty to the information with an undisclosed amount of drugs and then unreasonably advised him to stipulate at sentencing to an amount of drugs much larger than he felt he was responsible for. Lee also submits that Boyle was ineffective for failing to argue that his criminal history was overstated, failing to help him write an acceptance of responsibility letter, and failing to argue for certain sentence adjustments to account for time served in a related state sentence. Lastly, Lee argues that Boyle was more concerned with his relationship with Assistant United States Attorney

---

[1] At the evidentiary hearing, Lee appeared to abandon all contentions except the claim of ineffective assistance at the sentencing proceeding. Nonetheless, because Lee raised multiple issues in his initial petition, the Court will briefly address each one in this order.

Joseph Terz than zealously advocating for his client.

To obtain relief under § 2255 for an ineffective assistance of counsel claim, a defendant must demonstrate that 1) the attorney's conduct was deficient and 2) that he was objectively prejudiced by the deficiency. United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To be deficient, defense counsel's performance must have fallen "below an objective standard of reasonableness." Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). There is a "strong presumption" that counsel acted reasonably, and "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In cases where the ineffective assistance of counsel claim involves a guilty plea, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (internal citations omitted). To demonstrate prejudice in more general contexts, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

### A. Advice to Plead Guilty

In his § 2255 motion, Lee first argues that counsel was ineffective for advising him to sign a guilty plea to an undisclosed amount of drugs and for suggesting that Lee would likely receive a sentencing guideline range of forty-one to fifty-one months. As a corollary to this argument, Lee asserts that his plea was not knowing and voluntary because Boyle improperly

3

involved his mother, who helped convince him to plead guilty.

As the Government points out, it is clear that an incorrect sentencing prediction prior to a plea agreement does not amount to ineffective assistance of counsel where an adequate plea hearing was conducted to inform the defendant of the potential maximum sentence. Shedrick, 493 F.3d at 299 ("[W]e have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel."). Yet, Lee persists in his argument that counsel was ineffective, emphasizing that Attorney Boyle led him to believe that pleading guilty to an undisclosed quantity of drugs meant that the drug quantity would not be an issue at sentencing. (Doc. No. 135 at 1-2; Doc. No. 154 at 2.) Lee alleges that he would not have pled guilty had he known that he would have been sentenced for possession of more than twenty to forty grams of heroin. (Doc. No. 135 at 2.)

This assertion is plainly contradicted by the record. At the change of plea hearing, the Court ensured that Lee adequately understood that the only thing certain about his sentence was that it would not be greater than the maximum penalty of twenty years. (Doc. No. 108 at 8-11, 13.) The Court informed Lee that the sentence was uncertain at the time of the plea agreement because it would depend on a number of undetermined factors, including "the amount of drugs" ascribed to him. (Id. at 2.) The Court then asked Boyle what he had advised Lee the guideline range might be. (Id.) Boyle responded that the range was likely to be "anywhere between five and twelve years." (Id. at 12.) The Court then emphasized that despite the prediction, "nobody knows what [Lee's] sentence is going to be" and that Lee would not be permitted to change his mind or to withdraw the guilty plea simply because he was unhappy with the outcome of his sentence. (Id. at 13-14.) Lee confirmed that he voluntarily accepted those terms. (Id.)

4

Lee further demonstrated his knowledge of, understanding of, and willingness to join the plea agreement when he asked specific questions about the repercussions of the plea agreement. Lee asked whether there were stipulations in the agreement that no bodily injury enhancement would apply and that the Government would move for a 5K1 departure. (Id. at 14-16.) After being told there was no 5K1 agreement but that a bodily injury stipulation had been made apart from the plea agreement, Lee re-affirmed that he still desired to plead guilty. (Id. at 16.) Looking at the thorough plea colloquy, it is clear that Lee understood that the drug quantity remained in dispute and would be a factor at sentencing.

With respect to his contention that his mother's persuasive role was problematic, Lee does not allege that his mother improperly coerced him into pleading guilty, or that Boyle betrayed attorney-client privilege in informing her about the charges, thus her persuasive role does not render the agreement involuntary. Lee accepted the terms of the plea agreement willingly and voluntarily.

Moreover, Lee challenged the guilty plea on direct appeal and lost. Without much discussion, the Third Circuit Court of Appeals denied Lee's claim that he did not enter the guilty plea knowingly and voluntarily, finding that "there [was] no arguable merit" to the claim. (Doc. No. 131-2 at 4.)

For the foregoing reasons, the Court finds that Boyle's assistance to Lee at the guilty plea proceeding did not fall below the standard reasonably expected of defense counsel. There was no ineffective assistance of counsel in this respect.

> **B.** **Failure to Pursue Objections to the Presentence Report or to Have Evidentiary Hearing on Drug Amounts**

Lee next claims that Boyle's failure to pursue an objection to the drug quantity at the

sentencing hearing amounted to ineffective assistance of counsel. Lee claims that Boyle persuaded him to stipulate to 159 grams of heroin when there was no benefit to making such a concession. Lee argues that Boyle's advice was unreasonable because Lee had nothing to lose in challenging the drug quantity. Lee further argues that Boyle's averment to Lee's mother that Lee could receive a sentence as high as twenty years if he did not stipulate to the drug quantity was unreasonable.

Because the Government submitted an affidavit by Attorney Boyle disputing Lee's characterization of the events leading up to the sentencing hearing, the Court held an evidentiary hearing to determine disputed questions of fact. United States v. Dansker, 565 F.2d 1262, 1264 (3d Cir. 1977) ("Where the submission of written affidavits raises genuine issues of material fact . . . an evidentiary hearing should be conducted."). The facts that follow are those credited by the Court upon conclusion of all testimony presented.

Lee had always maintained that he was responsible for distributing only twenty to forty grams of heroin.[2] Boyle was concerned that Lee's steadfast adherence to such a minimal distribution would appear to the probation officer as a reluctance to accept responsibility. As a result, Boyle advised Lee not to speak with or to write to the probation officer prior to submission of the presentence report. Boyle encouraged the strategy of writing to the Court and the probation officer after release of the presentence report so he could ensure that Lee addressed every necessary issue raised therein.

---

[2] In fact, at the change of plea proceeding, Assistant United States Attorney Terz informed the Court that the basis for the plea was that twenty bundles of heroin were recovered from Lee's premises. (Doc. No. 108 at 17-18.) The Government does not contest that each of these twenty bundles weighed substantially less than one gram.

The presentence report calculated the drugs found in Lee's residence and those deemed sold by him according to an "owe sheet," and determined that over 149 grams of heroin and 130 grams of cocaine were attributable to Lee. (Presentence Report at 2.) The report also advised that Lee should not be granted the three-level reduction in offense level for acceptance of responsibility because he neither spoke with the probation officer nor wrote a letter accepting responsibility. (Id.) The report also recommended a two-level enhancement for obstruction of justice.

Boyle filed objections to the presentence report's calculation of drug quantities, recommendation that the credit for acceptance of responsibility not be granted, and proposed enhancement for obstruction of justice. (Doc. No. 101.) Only days prior to sentencing, Assistant United States Attorney Terz informed Boyle that he had witnesses who would testify at sentencing that Lee was responsible for distribution of over 159 grams of heroin, possibly as much as 400 grams. Boyle took this information to Lee and advised Lee to drop the objection to the drug quantities. Boyle reasoned that the drug quantity objection was unlikely to succeed, that it might weigh against his success in achieving the three-level credit for acceptance of responsibility, and that a parade of multiple witnesses, at least one of whom had a very negative past with Lee, would lessen the probability of a downward variance in consideration of the § 3553(a) factors. Boyle's primary strategy at sentencing was going to be to put Lee in a positive light as someone who had struggled with addiction, but who was a family man with a low risk of repeating his offense and a strong capability of being a productive member of society. Boyle hoped that such a presentation of Lee, in conjunction with Lee's mother's testimony, would result in a sentence at the low end of the guideline range, if not below the guideline range.

Lee initially resisted Boyle's advice that he accept the drug quantity proffered by the Government. Boyle explained to Lee that, while they could proceed to challenge the drug amount, it was a risky proposition—it would be Lee's word against the witnesses'. Boyle further explained that if Lee proceeded with the challenge to the drug quantity, three negative consequence might occur: Lee might be perceived as not accepting responsibility for the crime, thereby losing the three-level credit; the Court might find he was responsible for up to 400 grams of heroin; and the Court might develop an unfavorable impression of Lee from the testifying witnesses, resulting in a sentence at the upper end of the guideline range.

Boyle then spoke with Lee's mother, Robin Hamlett, and explained to her the options. When asked what the worst case scenario would be for her son at sentencing, Boyle responded "fifteen to twenty years." The morning of the sentencing, Hamlett persuaded Lee that the fifteen to twenty-year exposure was too much and that he should take the safer route: Concede the drug amounts to almost assuredly receive the acceptance of responsibility credit and avoid the obstruction of justice enhancement, and hope for leniency from the Court. Lee agreed.

The testimony credited by the Court at the evidentiary hearing indicates that Boyle's advice to concede the drug quantity was based on a sound tactical strategy, not unfamiliarity with the guidelines as Lee contends. Boyle testified to his belief that there was a significant likelihood that, with Hamlett and Lee's godmother testifying as to Lee's good character, as well as Lee's own testimony of remorse and genuine desire to change his life, the Court might impose a sentence below the guideline range in consideration of the § 3553(a) factors. (See also Doc. No. 109 at 11.) Any testimony by Denise Sherlock, whom the Government intended to use as a witness as to the drug quantity, would make such a possibility unlikely given that it would

8

introduce unfavorable information related to Lee's domestic abuse and other recent crimes.

It is true, as Lee points out, that Lee could have received a lower sentence had he successfully challenged the drug quantity, even if he had not received the acceptance of responsibility credit, but that does not make for an ineffectiveness finding. In fact, Lee could have received a much lower sentence had he succeeded on the drug quantity objection, received the acceptance of responsibility credit, and persuaded the Court for a variance in consideration of the § 3553(a) factors. For example, the best possible outcome for Lee would have been a finding that he only was responsible for a total marijuana equivalency of 45.05 kilograms, deserved the three-level credit for acceptance of responsibility, and did not deserve the obstruction of justice enhancement. These findings would have resulted in an offense level of 20 with a three-level reduction for acceptance: an offense level 17 with a guideline range of 51-63 months at Lee's criminal history category. Even in this case, however, Denise Sherlock and others would have testified for the Government, reducing the likelihood that the Court would have given Lee a variance below the guideline range in consideration of the § 3553(a) factors.

By contrast, Lee also could have received a much higher sentence than he received. Though Lee argues that the worst case scenario would have been exactly what he received, thereby making Boyle's advice unreasonable, Lee's contention is incorrect for three reasons. First, had the Government been able to prove 400 grams of heroin, it would indeed have put him in a higher base offense category. Four hundred grams of heroin translates into a marijuana equivalency of 400 kilograms, which, when added to the undisputed cocaine amounts, results in

9

a base offense level of 28, two levels higher than the offense level used at his actual sentencing.[3] Second, it is possible, as Boyle feared, that Lee's testimony with respect to the drug quantities may have convinced the Court that he was not accepting responsibility for the crime, resulting in him losing the three level credit for acceptance of responsibility. See generally, United States v. Chalkias, 971 F.2d 1206 (6th Cir. 1992) (attempting to minimize one's culpability may be found inconsistent with acceptance of responsibility). Third, the testimony of Denise Sherlock and other witnesses may have compelled the Court to find that a sentence at the upper end of the guideline range was more appropriate for Lee in light of his disrespect for the law, risk to the community, and personal characteristics. If all these risks had gone against Lee, the worst case scenario is that Lee would have been sentenced at a base level of 28 without an adjustment for acceptance of responsibility, resulting in a guideline range of 140-175 months. Accordingly, though Lee may have hoped to receive a sentence of just under five years, an unsuccessful challenge could have resulted in a sentence of fourteen years or more.[4]

---

[3] An offense level 28 carries with it a guideline range of 140-175 months at Lee's criminal history level, whereas an offense level of 26 carries with it a guideline range of 120-150 months.

[4] In fact, if the Court had accepted the presentence report's recommendation that Lee receive a two-level enhancement for obstruction of justice, Lee's maximum sentence exposure would have been 168-210 months. The Court does not emphasize this possibility, however, because Boyle testified to his belief that the Government did not have sufficient proof for such a finding.
 Nonetheless, the Court mentions it here because Lee also challenged Boyle's counsel on the basis that he inaccurately explained that Lee's maximum exposure could be fifteen to twenty years. The Court finds this contention to be meritless. As stated in the guilty plea hearing, the maximum sentence Lee could receive was, indeed, twenty years. (Doc. No. 108 at 9.) Moreover, as set forth herein, Lee possibly could have faced a seventeen-year sentence, though such possibility was unlikely. The guilty plea hearing demonstrates that Boyle advised Lee his sentence was likely to be within the range of five to twelve years, almost exactly the range computed above to be Lee's best and worst case scenarios. (Doc. No. 108 at 12.)

Given the totality of the circumstances as described above, the Court finds that Lee was informed of the risk, and potential loss, involved in pursuing his challenge to the drug quantity. As a result, Lee chose the safer route, which was to withdraw the objection and to have a strong likelihood of receiving the credit for acceptance of responsibility and a sentence at the lowest end of the guideline range. This decision was the product of a reasonable strategy which this Court will not second-guess; it was not the result of unfamiliarity with the guidelines as alleged. See Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (emphasizing that a reviewing court should not "second-guess counsel's assistance after conviction"); Yarborough v. Gentry, 540 US 1, 5-6 (2003) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . ."); Darden v. Wainwright, 477 U.S. 168, 186 (1986) ("[A] defendant must overcome the presumption that, under the circumstances, the challenged action of counsel might be considered sound trial strategy."). Though Lee may now regret his decision, and in hindsight would not have made the same decision, such regret cannot be the basis for relief. See Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) ("Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better."). For the reasons stated, the Court finds that Boyle's advice to stipulate to the drug quantity was not deficient.

### C. Concern Not to Offend Opposing Counsel

Lee next argues that Boyle was ineffective because he was more concerned with his relationship with Assistant United States Attorney Terz than he was with his representation of Lee. Specifically, Boyle allegedly refused to request an evidentiary hearing on drug quantities because he did not want to "piss off" opposing counsel.

11

At the evidentiary hearing, Boyle testified that he may have expressed displeasure at the possibility of contesting the drug quantity after he had informed Terz that Lee no longer intended to pursue the objection. However, Boyle also testified that if Lee had indeed made the decision to proceed with the objection, he would have informed the Court and Terz that the sentencing hearing should be postponed so that witnesses could be presented on the drug quantity issue. No evidence was presented that Boyle had an actual conflict of interest. See United States v. Pungitore, 910 F.2d 1084, 1141 (3d Cir. 1990) (finding that one must "point to an actual conflict of interest which adversely affected his attorney's performance" to make out a Sixth Amendment violation); United States v. Gambino, 864 F.2d 1064, 1070 (3d Cir. 1988) (requiring a § 2255 litigant alleging conflict of interest to show that "some plausible alternative defense strategy or tactic might have been pursued" but was not because it "was inherently in conflict with or not undertaken due to the attorney's other loyalties"). Stating that he did not want to unnecessarily aggravate the Assistant United States Attorney or retract his word does not, in itself, indicate that Boyle had a conflict of interest or acted in a way that benefitted Terz to Lee's disadvantage. As set forth above, Boyle's strategy to concede the drug quantity was a reasonable one that carried clear benefits to Lee. There is no indication that Boyle was ineffective based on a conflict of interest.

**D.     Not Aiding Lee in Writing an Acceptance of Responsibility Letter**

Lee contends that Boyle was ineffective because he did not aid Lee in writing an acceptance of responsibility letter to the probation officer. Boyle testified at the evidentiary hearing that this was a purposeful tactical decision. Boyle worried that Lee would overly-minimize his conduct, thus Boyle recommended that Lee wait until release of the probation

report to respond with his acceptance of responsibility letter so that it could address all the allegations.

Even without discussing the reasonableness of Boyle's tactical decision, the Court must deny Lee's claim because Lee cannot demonstrate prejudice. The record indicates that the Court granted Lee the full three-level credit for acceptance of responsibility. (Doc. No. 109 at 5.) Because Lee received the maximum credit for acceptance of responsibility, he cannot show that a different or better result would have obtained had Attorney Boyle aided him in drafting an acceptance of responsibility letter prior to distribution of the presentence report.

### E. Downward Departure for Overstated Criminal History

Lee also alleges Boyle was ineffective for failing to move for a downward departure on the basis that Lee's criminal history category overstated the seriousness of his criminal history. The probation office and the Court determined that Lee had a criminal history category of VI. (Doc. No. 109 at 6.) This criminal history finding was discussed at sentencing. (Doc. No. 109 at 14.) Lee's seventeen prior convictions comprise crimes of driving under the influence of alcohol, disorderly conduct, driving without a license, robbery, possession of controlled substances, and more. Together, the past convictions amount to twenty-seven criminal history points, putting Lee well into criminal history category VI. (Doc. No. 109 at 14; Presentence Report at 11.)

While it is true that Attorney Boyle did not move for a downward departure on the basis of an overstated criminal history, Lee has not shown that this inaction prejudiced him. The sentencing transcript makes clear that, though no objection was raised, the Court "considered [Lee's criminal history] very carefully" in arriving at its determination. (Doc. No. 109 at 21.) The Court intimated that it thought the criminal history was surprising given Lee's intelligence

13

and family support, but that the guideline calculation, including his criminal history, represented a sentencing range that was warranted for Lee's situation. (Id. at 20-21.) Having given the issue express and careful consideration even absent a motion, there is not a reasonable probability the Court would have arrived at a different result upon consideration of a motion.

Moreover, Lee arguably raised the issue at sentencing himself by stating that many of his past convictions were due to the fact he was "a self-medicating alcoholic," and therefore his history did not accurately portray his criminal past. (Id. at 21.) The Court acknowledged its understanding that much of the criminal history appeared to result from an addiction, but also responded that it was unpersuaded by Lee's argument. The Court stated, "Mr. Lee has so much obvious potential, yet such a bad criminal history and appears to be such a bad risk for recidivism." (Doc. No. 109 at 22.) The Court's statement makes clear that an objection to the overstatement of Lee's criminal history would not have been successful. Accordingly, Boyle cannot be deemed ineffective for failing to raise such an objection.

### F. Failure to Argue for 5G1.3 and 5K2.23 Downward Departure

Last, Lee contends that Attorney Boyle was ineffective because he did not argue that the sentence should be modified to account for the fifteen months Lee served in state court on "related" charges of assault and arson prior to the commencement of his federal sentence. Lee also filed a separate motion for credit time served in which he asked the Court to adjust his sentence to account for time served on the state charges. (Doc. No. 119, 129, 130.) Because they raise the same issue, the two motions will be considered in tandem here.

Lee alleges that the state crimes of assault and arson are related to his federal possession and distribution of heroin charge because the heroin dealing was discovered when police officers

responded to a call alleging Lee had committed assault and arson. The fact the drugs were discovered as the result of police response to these other charges, however, is not sufficient to demonstrate that a § 5K2.23 downward departure or § 5G1.3 sentencing adjustment applies. Because this argument is without merit, Boyle cannot be held ineffective for failing to raise it. Likewise, Lee's motion for credit time served will be denied.

Section 5K2.23, in conjunction with § 5G1.3(b), can provide for a downward departure in situations where a defendant serves time in state court on related charges. Section 5K2.23 provides:

> A downward departure may be appropriate if the defendant 1) has completed serving a term of imprisonment; and 2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term if Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5K2.23. Section 5G1.3(b) further provides:

> If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
> 1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> 2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b).

By the terms of the statute, then, to achieve credit on his federal drug sentence for the time served pursuant to the state assault and arson charges, Lee must show that his sentence "resulted from another offense that is relevant conduct to the instant offense." U.S.S.G. § 5G1.3; United States v. Parker, 512 F.3d 1037, 1040 (8th Cir. 2008). He must also show that the relevant conduct was a basis for an increase in the offense level of his current sentence. Id. Neither of those elements is present here.

The state assault and arson charges are not "relevant conduct to the instant offense" of distribution and possession of heroin according to the definition of relevant conduct as given by the guidelines. The guidelines define relevant conduct as that conduct which occurs during the course of, in preparation for, or in an attempt to disguise the conduct at issue in the subsequent proceeding. See U.S.S.G. § 1B1.3 and Application Notes (defining relevant conduct as "all acts . . . committed . . . by the defendant . . . that occurred during the course of commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."). Here, the state assault and arson charges were the product of a domestic dispute between Defendant Lee and Denise Sherlock. Though the drug sales were discovered as a result of the dispute, the drug distribution charges brought against Lee were entirely unrelated to and are independent from that domestic dispute. Lee has not shown that the state term of imprisonment for the assault and arson was "relevant conduct" to the drug distribution offense.

Lee also cannot meet the second requirement because he has not shown that the state arson and assault charges served as a basis for an increase in his offense level on his drug

16

sentence. Indeed, though the state assault and arson charges were considered in arriving at Lee's criminal history category, they were not used to calculate Lee's base offense level. See United States v. Izaguirre-Losoya, 219 F.3d 437, 439 (5th Cir. 2000) (holding that because a prior conviction was used in calculating criminal history category only, and not offense level, § 5G1.3(b) did not apply).

A motion for a sentencing adjustment on the basis that Lee had served time in state prison on related charges would have been unsuccessful if raised by Boyle at sentencing and is unsuccessful as raised by Lee now. Boyle was not ineffective for failing to move for a § 5G1.3 and § 5K2.23 downward departure. Lee's motion for credit time served will also be denied.

### III. CERTIFICATE OF APPEALABILITY

In proceedings under 28 U.S.C. § 2255, an applicant cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. Under 28 U.S.C. § 2253(c)(2), a court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debateable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court finds that reasonable jurists would not disagree with the Court's assessment of Lee's ineffective assistance of counsel claims. A COA will not issue in this case.

### IV. CONCLUSION

Upon consideration of the above reasoning and the facts found at an evidentiary hearing, the Court finds that Lee's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 will be denied. Additionally, Lee's motion for credit time served, to the extent it was not

fully reincorporated in his § 2255, will also be denied.

    An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SIDNEY LEE, | : | |
| Movant | : | Criminal Action No. 1:06-cr-267 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |
| | : | |

## **ORDER**

**AND NOW**, this 16th day of June 2010, upon consideration of Robert Sidney Lee's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, **IT IS HEREBY ORDERED** that the motion is **DENIED.** A certificate of appealability shall not issue.

**IT IS FURTHER ORDERED** that Lee's motion for credit time served and motion to amend (Doc. Nos. 119, 129, 130), to the extent it was not fully incorporated in his § 2255, is also **DENIED.**

S/ Yvette Kane<br>
Chief Judge Yvette Kane<br>
United States District Court<br>
Middle District of Pennsylvania